■ In the Matter of the Claim of ROBERT PORTER, Appellant, v TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [888 NYS2d 288]—

Stein, J. Appeal from a decision of the Workers' Compensation Board, filed July 30, 2008, which, among other things, ruled that claimant voluntarily withdrew from the labor market.

Claimant, who served as chief of security for the Triborough Bridge and Tunnel Authority (hereinafter the employer), suffered injuries to his neck, back, left shoulder, arm and hand while at work in December 2005. Claimant received workers' compensation benefits from the time of his injury until February 2006, when the employer, relying on an independent medical examination report, determined that claimant was able to return to work. A hearing was scheduled following claimant's request for further action. While the hearing was still pending, the employer sent claimant a letter directing him to return to work no later than June 5, 2006 or be considered to have abandoned his position and terminated. In response, claimant tendered his resignation, noting that he was compelled to do so in order to preserve benefits that he had accrued during his employment. He further noted that other physicians who had examined him had advised against his return to work.

After the hearing was concluded, a Workers' Compensation

Law Judge (hereinafter WCLJ) determined that claimant had voluntarily removed himself from the workplace and was not entitled to compensation after February 2006. Upon review, the Workers' Compensation Board precluded the reports of three independent medical examiners due to violations of Workers' Compensation Law § 137. Nonetheless, the Board affirmed the WCLJ's determination, prompting this appeal by claimant.

We affirm. The Board's determination that claimant had voluntarily withdrawn from the labor market was supported by substantial evidence in the record. In February 2006, claimant e-mailed the employer inquiring as to what provisions would be made for light-duty work. Claimant noted that he was unable to drive or use a computer for more than 10 minutes at a time. The employer responded on the same day and, acknowledging the same limitations noted by claimant, stated that he could return to work so long as he did not drive while taking narcotic medications, work at a computer for more than 10 minutes at a time or lift any objects weighing more than 10 to 15 pounds. Thus, implicit in the employer's response was that the offer to return to claimant's former position contemplated that his work would be so limited. Although the employer based its position on information from the reports of the independent medical examiners that were ultimately excluded from evidence, the limitations set forth therein were consistent with those identified by claimant's own physicians, whose testimony was received in evidence. Furthermore, to the extent that claimant would have been required to drive in order to be able to return to work, he agreed that 70% to 75% of his work was done at one location and begrudgingly conceded that arrangements could have been made for someone to drive him to different facilities when necessary. "Inasmuch as the record contains evidence that claimant refused light-duty assignments consistent with [his] limitations, the Board's determination that claimant voluntarily withdrew from the labor market is supported by substantial evidence" (*Matter of Bacci v Staten Is. Univ. Hosp.*, 32 AD3d 582, 583-584 [2006] [citations omitted]), even though the record could support a contrary result (*see Matter of Grant v Niagara Mohawk Power Co.*, 53 AD3d 972, 973 [2008]).

In addition to the Board's reasonable conclusion that claimant refused to return to perform light-duty work, there is ample evidence in the record to support the Board's conclusion that claimant simply chose to retire.* In February 2006, he was 63 years old. Despite his purported inability to return to work,

---

* Notwithstanding claimant's contention to the contrary, it is evident from a reading of the Board's decision, as a whole, that the Board did not conclude

even with the limitations acknowledged by the employer, claimant flew to the Bahamas in March 2006 and, by June 2006, had driven three times to Maryland, where he keeps a boat (and where he ultimately moved his residence during the pendency of this proceeding). Furthermore, claimant made no attempt to seek other employment within his limitations following his resignation. Claimant's assertion that he was incapable of returning to work, in accordance with the opinions of two doctors, presented an issue of credibility for the Board's determination and the Board was free to discredit those opinions (*see Matter of Petrillo v Cooke*, 60 AD3d at 1115-1116; *Matter of Connell v Consolidated Edison Co. of N.Y., Inc.*, 49 AD3d at 1056). Inasmuch as the Board's decision is supported by substantial evidence, we decline to disturb it (*see Matter of Renteria v Santino's Café*, 62 AD3d 1233, 1234 [2009]; *Matter of Petrillo v Cooke*, 60 AD3d at 1115-1116; *Matter of Beehm v Educational Opportunity Ctr., County of Rensselaer*, 272 AD2d 808, 808 [2000]).

Peters, J.P., Spain, Rose and Kane, JJ., concur. Ordered that the decision is affirmed, without costs.

that the injury ultimately caused or contributed to his decision to retire (*see Matter of Petrillo v Cooke*, 60 AD3d 1115, 1115-1116 [2009]; *Matter of Connell v Consolidated Edison Co. of N.Y., Inc.*, 49 AD3d 1055, 1056 [2008]).